UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TRAVELERS CASUALTY & SURETY
COMPANY OF AMERICA, a Connecticut                    CIVIL ACTION NO.: 1:03cv762Ro
corporation,

        Plaintiff,

v.

J. L. HOLLOWAY; EMILE DUMESNIL;
CHARLES DECUIR; JOHN ALFORD;
RICHARD T. MCCREARY; RICK REES;
JOHN DANE, III; ALAN A. BAKER; T. JAY
COLLINS; JEROME L. GOLDMAN; GARY
KOTT; RAYMOND E. MABUS; ANGUS R.
COOPER, II; BARRY J. GALT; KENNETH
W. LEWIS; and ERNST & YOUNG, L.L.P.

        Defendants.
_____/

**REBUTTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
TO EXCLUDE EXPERT TESTIMONY AND REPORT OF BRIAN DOWNEY**

Plaintiff Travelers Casualty and Surety Company of America ("Travelers"), through its

undersigned counsel, pursuant to Local Rule 7.1(E), respectfully files herein its Rebuttal

Memorandum in Support of Plaintiff's Motion to Exclude Expert Testimony and Report of Brian

Downey.

**INTRODUCTION**

In its opposing memorandum, Defendant Ernst & Young, LLP ("E&Y") attempts to

characterize the report of its proposed underwriting expert, Brian Downey (the "Report"), as follows:

"As explained in his testimony and Report, Mr. Downey's conclusions - - based on *all* of the evidence

**CIVIL ACTION NO.: 1:03cv762Ro**

he reviewed - - were simply that Travelers *should not have* relied upon the Financial Statements...and, to the extent it reversed its earlier declination of the account based on the Financial Statements, such decision was at odds with the reasonable application of surety underwriting principles." *Ernst & Young LLP's Response in Opposition to Plaintiff's Motion to Exclude Expert Testimony and Report of Brian Downey* ("*E&Y Memorandum*"), at p. 8 (emphasis in original, citations omitted). Thus, E&Y argues that Mr. Downey intends *only* to testify that Travelers' reliance on the financial statements audited by E&Y was somehow not reasonable, and that his Report is similarly limited in scope.

If this were the extent of Mr. Downey's Report and his expected expert testimony, Travelers would not have moved to exclude him as an expert in this case. Although Travelers obviously disagrees with the proposition that its reliance was unreasonable, Travelers by this motion does not seek to bar Mr. Downey from promoting the E&Y "party line" - - when you find yourself sued for negligence arising from one of your audits, argue that reliance on that financial statement more than a few months after its issuance is "unreasonable as a matter of law" because those audits are "stale" or outdated. As demonstrated in Travelers' Summary Judgment Opposition Memo, E&Y has made this argument before, and lost. *See*, *In re Regal Comm. Corp. Sec. Lit.*, 1996 WL 411654 (E.D.Pa. July 17, 1996) (holding, in securities class action against E&Y, that reliance on *fifteen month old* financial statements is not unreasonable: "As to the materiality of the alleged misstatements, while E & Y argues that the financials were over fifteen months old by January 14, 1996, it provides no authority to support the proposition that an auditor's opinion becomes 'stale' as a matter of law

2

**CIVIL ACTION NO.: 1:03cv762Ro**

within a certain time frame."). Slip op. at *3, attached as Exhibit "6" to *Travelers' Summary Judgment Opposition Memo*.[1]

However, Mr. Downey's Report goes well beyond the issue of whether Travelers' reliance was reasonable, and expressly opines that Travelers *did not* rely on the audited financial statements, effectively "mooting" the issue of whether Travelers *should or should not have* relied. It is that first opinion - - that Travelers allegedly did not rely on the audited financials - - that Travelers seeks to strike, and which must be stricken, because it is flatly contradicted by direct evidence in the record, specifically, the testimony of Mike Pete and Fred Schwait. For the reasons stated in Travelers' "Motion to Exclude Expert Testimony and Report of Brian Downey" ("*Travelers' Motion to Exclude*") as well as its supporting memorandum ("*Travelers' Original Memorandum*"), Mr. Downey should not be permitted to offer expert testimony on the credibility of these or any other witnesses in order to arrive at the conclusion urged by E&Y. He is not an expert in "witness believability," if in fact such a thing even exists. The credibility of the witnesses is for the jury to decide, not Mr. Downey. For this reason, that part of his report that opines that Travelers did not rely on the financial statements audited by E&Y must be stricken, and any testimony related thereto must be precluded.

---

[1]E&Y did not disclose this decision in its motion for summary judgment or supporting memorandum, instead arguing therein (and rearguing herein) that the law on the subject was so well-settled that reliance on an audited financial statement that was more than a few months old was "unreasonable as a matter of law."

CIVIL ACTION NO.: 1:03cv762Ro

## II.  ARGUMENT

**A.     Contrary to E&Y's Argument, Downey's Report Expressly Opines, and Downey Intends to Testify, that Travelers Did Not Rely on the Financial Statements Audited by E&Y**

Although E&Y tries to create the impression that Mr. Downey intends to opine solely as to the question of whether Travelers should have relied on the 1999 audited financial statements, Mr. Downey at his deposition did not shy away from the fact that he intends to offer expert testimony that Travelers did not rely on the 1999 10-K.  Thus, Mr. Downey affirmed that although Mike Pete testified over and over again that he *did* rely on the audited financial statements, Mr. Downey's Report intended to say that Mr. Pete *did not*.  *Travelers' Original Memorandum*, at p. 6.  Mr. Downey went on to admit that the very premise of his Report was that Travelers' underwriters did not rely on the 1999 10-K which contained the audited financial statements, and that if they did rely, his Report would necessarily have to change.  *Id*, at p. 7.  Mr. Downey also admitted that although Mr. Pete in fact testified that he relied on the 1999 10-K, he intended in his Report to exclude that fact in his discussion about what the Travelers underwriters relied upon in making their decision to recommend issuance of the Bond.  *Id*, at 10-11.  It is therefore clear that Mr. Downey intends to opine to the jury that, in his expert opinion, Travelers did not rely on the financial statements audited by E&Y, despite the sworn testimony of Messrs. Pete and Schwait to the contrary.

Because it is the unambiguous thrust of Mr. Downey's Report and his expected testimony that Travelers *did not* rely on the audited financial statements, it is disingenuous for E&Y to suggest, as it does at page 8 of the *E&Y Memorandum*, that Mr. Downey's conclusions "were simply that Travelers *should not have* relied upon the Financial Statements...and, to the extent it reversed its

CIVIL ACTION NO.: 1:03cv762Ro

earlier declination of the account based on the Financial Statements, such decision was 'at odds with

the reasonable application of surety underwriting principles'." *E&Y Memorandum*, at p. 8 (emphasis

in original, internal quotation from the Report at p. 6). It is equally insincere for E&Y to pretend

that, at trial, Mr. Downey will limit his testimony to his "conclusion...that any reliance by Travelers

was unreasonable as a matter of law." *Id*, at p. 12. Travelers is therefore in need of an order that will

expressly prohibit E&Y from offering Mr. Downey as an expert on the issue of whether Travelers

relied on the financial statements which E&Y audited.

**B.**      **Downey Should Not Be Permitted to Opine that Travelers Did Not Rely on the 1999 Audited Financial Statements, Because the Indisputable Record Facts Contradict or Otherwise Render that Opinion Unreasonable**

As Mr. Downey admitted at his deposition, there is no dispute about the fact that Mike Pete,

one of Travelers' underwriters, testified under oath that he relied on the financial statements audited

by E&Y. *Travelers' Original Memorandum*, at pp. 8-9. Mr. Downey then conceded that he had no

reason to disbelieve Mr. Pete when Mr. Pete swore that he did rely. *Id*, at 9-10. Moreover, Mr.

Downey admitted that if Fred Schwait had testified that he relied on the financial statements, then it

would have been "appropriate" to include that fact in his report. *Id*, at p. 11. As demonstrated in

Travelers' Original Memorandum, the record is clear that Mr. Schwait, like Mr. Pete, testified that

he in fact relied: "We were relying on the 12/31/99 10-K as being accurate relative to the assets. So

it was important that we knew that that estimate, for example, on Petrodrill, at $60 Million, was an

accurate estimate, because it supported assets and supported earnings in the 12/31/99 statement."

*Deposition of Fred Schwait* (attached to Travelers' Motion to Exclude as composite Exhibit "D").

CIVIL ACTION NO.: 1:03cv762Ro

*See* also *Travelers' Original Memorandum*, at p. 12.[2]   Accordingly, even Mr. Downey admits that

the indisputable record evidence is that Travelers, reasonably or unreasonably, relied on the 1999

audited financial statements.

Because the record is undisputed that Travelers relied on the audited financials, E&Y should

not be permitted to offer expert testimony, through Mr. Downey or anyone else, that argues

otherwise.  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242, 113 S.Ct.

2578 (1993) (expert opinion cannot sustain jury's verdict when "indisputable record facts contradict

or otherwise render the opinion unreasonable"); *United States v. Rushing*, 388 F.3d 1153, 1156-57

(8th Cir. 2004) (affirming order excluding expert testimony that contradicted the facts of the case:

"**Expert  testimony should not be admitted when** it is speculative, it is not supported by sufficient

facts, or **the facts of the case contradict or otherwise render the opinion unreasonable**.")

(emphasis added); *see also Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir.1999) (allowing

expert testimony where it was consistent with one of two competing versions of fact witness

testimony, but noting: "Expert testimony is not inadmissible simply because it contradicts eyewitness

testimony. **Expert  testimony, however, is inadmissible when the facts upon which the expert**

**bases his testimony contradict the evidence**.") (emphasis added, citing *United States v. Chaney*,

577 F.2d 433, 435 (7th Cir.1978)).[3]

---

[2]Thus Mr. Downey is essentially saying that his Report is intentionally misleading, because
to include the "appropriate" facts - - that Mr. Schwait relied on the audited financial statements - -
would contradict the point of his Report, which is that Travelers did not rely.

[3]E&Y flatly misrepresents the record when it implies that Travelers' underwriting expert,
George Beutner, agrees with Mr. Downey that Travelers did not rely on the audited financial
statements (*E&Y Memorandum,* FN 11, at p. 13).  E&Y is well aware that Mr. Beutner's position

E&Y tries mightily to argue that Mr. Downey is not really passing on the credibility of Travelers' witnesses, but his assessment that they *did not* rely, in the face of their sworn, uncontradicted, testimony that they *did* rely, cannot be anything *but* a comment on their collective believability.  This the Court should not and cannot allow, since the law is clear that this type of opinion testimony is not proper expert testimony.  *United States v. Spotted War Bonnet*, 882 F.2d 1360, 1362 (8th Cir. 1989), *rev'd on other grounds*, 497 U.S. 1021 (1990) (an expert is not permitted to offer an opinion as to the believability or truthfulness of a victim's story); *United States v. Jackson*, 576 F.2d 46, 49 (5th Cir. 1978) (excluding psychiatric opinion as to the witnesses' reliability in distinguishing truth from fact because "it invades the jury's province to make credibility determinations").

Because the testimony of Travelers' witnesses concerning their reliance on the audited financial statements is uncontradicted, the Court should prohibit Mr. Downey from urging the jury

---

is that Travelers *did rely*.  First, his revised expert report his opinion that "Travelers acted within the surety industry standard of care in receiving *and relying on* the information from FGH, its employees, and other information *including the fiscal year end financial statement audited by Ernst & Young*."  *Exhibit B -502*, attached to the transcript of the George Beutner Deposition ("*Buetner Depo."*), and attached hereto as Exhibit "A."  Second, at his deposition Mr. Beutner clarified that his expert report was intended to opine and conclude that Travelers continued to rely on the audited financials, notwithstanding that Travelers also placed reliance on the capital-enhancing steps taken by FGH to boost its financial standing: "...I think it's the fourth page of my statement or report...it says 'Later relying on the interim information provided about the liquidity campaign, these two bonds were approved.' There is two things I don't like about that statement.  I could have done a better job, I think I say it elsewhere, but one of the things is they weren't relying on information, meaning someone told them about the subsequent event, but those events actually occurred.  *And the second thing is it doesn't mention that they continued to rely on the audited financial statement, which I truly believe they did, and the two underwriters with Travelers also said that in their depositions, that they did continue to rely on audited financial statements.*"  *Beutner Depo.*, at pp. 33-34, attached hereto as Exhibit "B" (emphasis added).

7

CIVIL ACTION NO.: 1:03cv762Ro

that, in effect, these witnesses are unworthy of belief. The Court should therefore prohibit E&Y from

introducing expert testimony that seeks to establish that Travelers did not rely on the 1999 financial

statements audited by E&Y.[4]

**C.      Downey Should Not Be Permitted to Opine that Travelers Did Not Rely on the 1999 Audited Financial Statements Because He Has Admitted, and E&Y Concedes, that He Does Not Know If In Fact They Did or Did Not**

It should not be too much to ask of proposed experts that they know what they are talking

about with respect to the subject matter about which they propose to opine. If there is any doubt

about their knowledge on a particular subject, they should not be allowed to testify on the point. And

if the proposed expert candidly admits that he does not know what he is talking about, he should sit

down and shut up.

With all due respect to Mr. Downey, with respect to the question of whether Travelers relied

on the 1999 financial statements audited by E&Y, he should sit down and shut up.

Mr. Downey admitted that although he intends to put on his "expert hat" and proclaim that

Travelers did not rely on the audited financial statements, he really does not know if they did or did

not:

Q.      I want to get back to my question about the staleness or the freshness, if you will, [sic] year-end audited financial statements. In September of 2000, is it your position that the

---

[4]Nor should the Court allow E&Y to masquerade Mr. Downey's impermissible opinion that Travelers' witnesses are not worthy of belief, with a somewhat less offensive suggestion that the jury should "discount" their testimony. *Travelers' Original Memorandum*, at p. 13, quoting Downey Deposition (Exhibit "B") to *Travelers' Motion to Exclude*. Whether an expert tells a jury not to believe the other side's witness, or sugar coats his attack by urging the jury to "discount" the word of an opponent's witness, the effect is the same - - it becomes an impermissible comment on the credibility of the witnesses, and a usurping of the jury's function, and both forms of testimony should be disallowed.

underwriters at Travelers should not have relied on the 1999 year-end audited financial statement for FGH?

A.      That is correct.

Q.      Do you have any knowledge as to whether they did rely or they did not rely on those financial statements?

A.      I do not.

Q.      So you don't know one way or the other, do you?

A.      I do not.

*Id*, at p. 23, line 18 - p. 24, line 8.  *See* also *Travelers' Original Memorandum*, at p. 7.  Not only does

Mr. Downey admit that he does not know if Travelers relied on the financial statements, but E&Y

even concedes that he does not know, although E&Y curiously points to this fact as somehow

supportive of its summary judgment motion: "Indeed, Downey's testimony that he did not know

whether Pete and Schwait actually did or did not rely on the Financial Statements, but he knew that

they *should not have relied* is consistent with E&Y's contention on summary judgment."  *E&Y*

*Memorandum,* FN 3, pp. 2-3 (emphasis in original).

Having admitted that Mr. Downey does not know if Messrs. Pete and Schwait relied on the

financial statements, his "expert opinion" that they did not reveals itself as nothing more than

speculation.  As this Court has previously held, an expert is not permitted to base his opinion on

speculation, and for that reason his testimony cannot be allowed.  *Lott v. Rental Service Corporation*,

2006 WL 839558, \*2 (S.D. Miss. 2006) ("Under the *Daubert* standard, speculative opinion testimony

is not reliable opinion testimony"); *See* also *Travelers' Original Memorandum*, at p. 13.

**CIVIL ACTION NO.: 1:03cv762Ro**

Simply put, because both E&Y and Mr. Downing have admitted that he does not know if Travelers did or did not rely on the audited financial statements, that part of Mr. Downey's Report which seeks to opine and conclude that they did not should be stricken, and he should be prohibited from testifying on this issue.

## CONCLUSION

A witness who admits to not knowing the answer to a question should not be permitted to opine as an expert on the question, especially when all of the record evidence contradicts his purported expert opinion.   In this case, Mr. Downey admitted that he does not know one way or the other whether Travelers did or did not rely on the audited financial statements, and moreover the record is undisputed that Travelers did.   For the reasons set forth herein, as well as in Travelers' Original Memorandum, Travelers respectfully requests that the Court preclude Mr. Downey from testifying that Travelers did not rely on the 10-K, and strike that part of his Report which includes that opinion and conclusion.

## CERTIFICATE OF SERVICE

I, Frank R. Rodriguez, attorney for Plaintiff, Travelers Casualty & Surety Co. of America, do hereby certify that I have this date caused a true and correct copy of the foregoing to be served upon counsel for Defendant as follows:


VIA U.S. MAIL:

Joseph B. Haynes, Esq.
Michael M. Raeber, Esq.
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521

**CIVIL ACTION NO.: 1:03cv762Ro**

Cheri A. Grosvenor, Esq.
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521

Lisa Wolfgast, Esq.
King & Spalding, LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309-3521

VIA E-MAIL:

Joseph B. Haynes, Esq. - jhaynes@kslaw.com
Michael M. Raeber, Esq. - mraeber@kslaw.com
Cheri A. Grosvenor, Esq. - cgrosvenor@kslaw.com
Lisa Wolfgast, Esq. - lwolfgast@kslaw.com

This 26th day of June, 2006.

/s/ Frank R. Rodriguez

Travelers Casualty and Surety Company
Of America, Plaintiff

RODRIGUEZ TRAMONT
  GUERRA & NUÑEZ, P.A.

By:/s/ Frank R. Rodriguez
      COUNSEL OF RECORD

William V. Westbrook, III (MS Bar 7119)
John Paul Barber (MS Bar 1983)
Bryant, Clark, Dukes, Blakeslee,
  Ramsay & Hammond, PLLC
2223 14th Street
P.O. Box 10
Gulfport, Mississippi 39502
Telephone: (228) 863-6101
Facsimile: (228) 868-9077

11

**CIVIL ACTION NO.: 1:03cv762Ro**

OF COUNSEL:
Andrew V. Tramont, Esq. (FL Bar 322830)
Frank R. Rodriguez, Esq. (FL Bar348988)
RODRIGUEZ TRAMONT
  GUERRA & NUÑEZ, P.A.
2100 Ponce De Leon Boulevard, PH II
Coral Gables, Florida 33134
Telephone: (305) 350-2300
Facsimile: (305) 350-2525
Attorneys for Plaintiff,
Travelers Casualty And
Surety Company of America